

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

**NO. 2-07-332-CV**

NOBLE A. CRAFT AND
NATHANIAL A. CRAFT                                                        APPELLANTS

V.

SUE ELLEN DAVIS AND
SOSOY CO. CORPORATION                                                    APPELLEES

------------

FROM THE 96TH DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

In thirteen issues, Appellants Noble A. Craft and Nathanial A. Craft appeal

from the trial court's confirmation of an arbitration award. Because we hold

that the trial court did not err by confirming the award and that the trial court

---

[1] *See* Tex. R. App. P. 47.4.

did not abuse its discretion by denying the Crafts' motion to modify the judgment, we affirm the trial court's judgment.

## FACTS AND PROCEDURAL HISTORY

In December 2003, Appellee Sue Ellen Davis organized Appellee SoSoy Co. Corporation, a California corporation, for the purpose of developing and marketing a line of cosmetics. Under an agreement dated November 30, 2004, Davis transferred 25% of SoSoy's outstanding stock to Noble and 25% to Nathanial; Davis retained the remaining 50%. Noble was named President and Treasurer of SoSoy, and Nathanial was named Vice President and Secretary; Davis remained CEO. The three officers made up the board of directors. The parties also entered into a noncompete agreement, which provided that any disputes "not amicably settled" would be subject to binding arbitration.

In May 2005, the parties entered into another agreement. Under this agreement, Davis consented to transfer "additional [SoSoy] stock to equal the ratio of 33-1/3% of all of the outstanding shares" to Noble and 33-1/3% of all outstanding SoSoy stock to Nathanial. The parties further agreed that if the board of directors formed a new corporation, all SoSoy stockholders would transfer all stock and interest held to the new entity. The agreement provided that "this agreement will replace and will survive any and all agreement pertaining to the equity issue previously agreed upon."

2

The parties ultimately could not agree on marketing strategies for SoSoy's products, leading to serious conflicts between Davis and the Crafts. At some point, the Crafts set up a Nevada corporation, and in early May 2006, they attempted to transfer SoSoy's assets to the new corporation.

On May 19, 2006, the Crafts filed an original petition alleging that Davis was attempting to take over control of SoSoy, that she had breached her fiduciary duty to the Crafts and to SoSoy, and that she had breached her contract with the Crafts. Davis and SoSoy entered a general denial, asserted affirmative defenses, alleged that the contract was unenforceable because of the Crafts' prior breach and repudiation of the contract, and entered counterclaims. Davis also filed a motion to compel arbitration, which was granted.

In accordance with the trial court's order, the parties arbitrated their dispute through JAMS, a private alternative dispute resolution provider. The arbitrator found that Davis did not breach or repudiate the contract and that the Crafts breached the contract and converted Davis's personal property. The arbitrator awarded Davis $18,000 for her breach of contract claim, $2,000 for her conversion claim, $26,950 for her attorney's fees, pre-award and post-award interest, and the arbitration fees and expenses she incurred.

Davis filed a motion in the trial court to confirm the arbitration award and asked that the court grant her costs related to the arbitration as provided in the award. The motion did not specify the amount of costs requested. The Crafts opposed the confirmation and filed an application to vacate or modify the award. The trial court entered a final judgment confirming the award and ordering the Crafts to pay Davis's arbitration costs of $9,353.07.

The Crafts then filed a motion to modify the judgment in which they argued that there was no evidence in the record to support the amount of costs. Davis subsequently filed a statement of arbitration fees ("billing statement") claiming payments to the arbitrator of $9,353.07. After a hearing, the trial court denied the Crafts' motion to modify the judgment.

### STANDARDS OF REVIEW

A court of appeals reviews a trial court's confirmation of an arbitration award de novo.[2] Our review of an arbitration award is extraordinarily narrow; we "indulge every reasonable presumption in order to uphold the arbitration award."[3] The party seeking to vacate an arbitration award has the burden in the trial court of bringing forth a complete record establishing a basis that

---

[2] *Hisaw & Assocs. Gen. Contractors, Inc. v. Cornerstone Concrete Sys., Inc.*, 115 S.W.3d 16, 18 (Tex. App.—Fort Worth 2003, pet. denied).

[3] *Id.*

4

would warrant vacating the award.[4]  Without a record of the arbitration proceedings, "the appellate court will presume the evidence was adequate to support the award."[5]  We will not vacate an arbitration award for a "mistake of fact or law."[6]

We review for abuse of discretion a trial court's decision on a motion to modify a judgment.[7] To determine whether a trial court abused its discretion, we must decide whether the trial court acted without reference to any guiding rules or principles; in other words, we must decide whether the act was arbitrary or unreasonable.[8]  Merely because a trial court may decide a matter within its discretion in a different manner than an appellate court would in a

---

[4] *Teleometrics Int'l, Inc. v. Hall*, 922 S.W.2d 189, 193 (Tex. App.—Houston [1st Dist.] 1995, writ denied).

[5] *Statewide Remodeling, Inc. v. Williams*, 244 S.W.3d 564, 568 (Tex. App.—Dallas 2008, no pet.).

[6] *Grand Homes 96, L.P. v. Loudermilk*, 208 S.W.3d 696, 705 (Tex. App.—Fort Worth 2006, pet. denied); *Crossmark, Inc. v. Hazar*, 124 S.W.3d 422, 429 (Tex. App.—Dallas 2004, pet. denied); *Jamison & Harris v. Nat'l Loan Investors*, 939 S.W.2d 735, 737 (Tex. App.—Houston [14th Dist.] 1997, writ denied).

[7] *Eng'rs' Petroleum Co. v. Gourley*, 243 S.W. 595, 598 (Tex. Civ. App.—Fort Worth 1922, no writ) (holding trial court did not abuse its discretion by amending judgment during term); *see also Ferguson v. Naylor*, 860 S.W.2d 123, 126–27 (Tex. App.—Amarillo 1993, writ denied).

[8] *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985), *cert. denied*, 476 U.S. 1159 (1986).

5

similar circumstance does not demonstrate that an abuse of discretion has occurred.[9]

### ANALYSIS

Eleven of the Crafts' thirteen issues relate to whether the arbitrator exceeded his powers, made a gross mistake, or manifestly disregarded the law.

An arbitrator exceeds his powers when he decides matters not properly before him.[10] Although the Crafts claim that the arbitrator decided issues not submitted to him by any party, without a record, we cannot determine whether Davis or the Crafts asked the arbitrator during the proceedings to decide those issues and thus whether the arbitrator did exceed his powers.[11]

An arbitrator makes a gross mistake if the mistake is one that "implies bad faith or a failure to exercise honest judgment and results in a decision that

---

[9] *Id.*

[10] *Pheng Invs., Inc. v. Rodriquez*, 196 S.W.3d 322, 329 (Tex. App.—Fort Worth 2006, no pet.).

[11] *See Kline v. O'Quinn*, 874 S.W.2d 776, 782–83 (Tex. App.—Houston [14th Dist.] 1994, writ denied) (holding that without a record of the arbitration, the court was unable to determine what claims were submitted to the arbitrators, that nothing in the record supported Kline's arguments that the pleadings and proof submitted to the arbitrators by O'Quinn did not support the award, and that "the enforcement of pleading requirements before an arbitrator is ordinarily a procedural matter for the arbitrator"), *cert. denied*, 515 U.S. 1142 (1995).

6

is arbitrary and capricious."[12] The terms arbitrary and capricious "mean willful and unreasoning action, action without consideration and in disregard of the facts and circumstances of the case."[13] Without a record, we cannot determine whether the arbitrator acted without consideration and in disregard of the facts and circumstances of the case and thus whether any mistake made by the arbitrator rose to the level of gross mistake.[14]

An arbitrator manifestly disregards the law when he clearly recognizes the law but chooses to ignore it or refuses to apply it correctly.[15] The burden is on the party seeking to vacate the award to demonstrate that the arbitrator acted in manifest disregard of the law and to bring forth a complete record of the arbitration proceedings to support such a claim.[16] Although the Crafts claim that they provided the arbitrator with the applicable law, without the record of the arbitration proceedings, we cannot determine whether the arbitrator clearly

---

[12] *Statewide Remodeling, Inc.*, 244 S.W.3d at 568; *see also Pheng Invs.,* 196 S.W.3d at 330.

[13] *Grand Int'l Bhd. of Locomotive Eng'rs v. Wilson,* 341 S.W.2d 206, 211 (Tex. Civ. App.—Fort Worth 1960, writ ref'd n.r.e.); *Bailey & Williams v. Westfall*, 727 S.W.2d 86, 90 (Tex. App.—Dallas 1987, writ ref'd n.r.e.).

[14] *See Statewide Remodeling, Inc.*, 244 S.W.3d at 569–70.

[15] *Pheng Invs.,* 196 S.W.3d at 331; *Home Owners Mgmt. Enters., Inc. v. Dean*, 230 S.W.3d 766, 768–69 (Tex. App.—Dallas 2007, no pet.).

[16] *Home Owners Mgmt. Enters.*, 230 S.W.3d at 769.

recognized the applicable law and chose to ignore it or refused to apply it correctly. Accordingly, we cannot determine whether the arbitrator manifestly disregarded the law.[17]

Because we cannot determine whether the arbitrator exceeded his powers, made a gross mistake, or manifestly disregarded the law, we overrule the Crafts' first, second, third, fourth, fifth, sixth, seventh, eighth, ninth, tenth, and twelfth issues.

In their eleventh issue, the Crafts argue that the arbitrator is guilty of evident partiality based on the fact that: (1) the arbitrator allowed Davis to put on evidence of her affirmative claims when she did not prepay the arbitration fee; (2) the arbitrator initially designated the Crafts, rather than Davis, as the "claiming parties"; (3) the arbitrator did not dismiss SoSoy from the proceeding; and (4) the arbitrator did not disqualify Davis's counsel from representing SoSoy. The Crafts have not established specific facts that indicate improper motives on the part of the arbitrator[18] or that "establish a reasonable impression of the arbitrator's partiality to one party, such as an interest in the outcome or

---

[17] *See id.*

[18] *See Int'l Bank of Commerce-Brownsville v. Int'l Energy Dev. Corp.*, 981 S.W.2d 38, 44 (Tex. App.—Corpus Christi 1998, pet. denied) (noting that the party asserting evident partiality of the arbitrator as a ground to set aside an award has a heavy burden), *cert. denied,* 528 U.S. 1137 (2000).

a relationship with a party."[19] We have no record from the arbitration, and the facts asserted by the Crafts,[20] even if true, do not establish partiality.[21] We overrule their eleventh issue.

In their final issue, the Crafts argue that the trial court erred by assessing against them $9,353.07 in arbitration fees and costs when no evidence of the amount of those costs was timely submitted to the trial court prior to its judgment. The arbitration award did not specify the amount of arbitration fees recoverable by Davis; it simply awarded her the fees that she had incurred. When Davis filed her motion to confirm the award, she asked the trial court to enter judgment awarding her arbitration costs, but she did not specify the amount of those costs. The Crafts did not object in their response that her motion did not include a specific amount for arbitration costs. The trial court's judgment, however, listed the amount of arbitration costs that the Crafts now dispute. The Crafts then filed a motion to modify the judgment, objecting that

---

[19] *In re C.A.K.*, 155 S.W.3d 554, 564 (Tex. App.—San Antonio 2004, pet. denied) (noting that an arbitration award alone cannot establish evident partiality).

[20] *See Int'l Bank of Commerce-Brownsville*, 981 S.W.2d at 44 (party asserting partiality bears the burden to establish such partiality).

[21] *See Crossmark, Inc.*, 124 S.W.3d at 429 (holding that a mere mistake of fact or law does not justify a trial court setting aside an arbitration award).

9

there was no timely evidence to support the award of arbitration fees and costs. Prior to the hearing on the motion, Davis's attorney filed a statement of arbitration fees, which we construe as a motion to reopen the evidence under Rule 270 of the Texas Rules of Civil Procedure.[22] At the hearing, the trial court denied the Crafts' motion.

It is within a trial court's discretion to "permit additional evidence to be offered at any time" when doing so "clearly appears to be necessary to the due administration of justice."[23] In a bench trial, the trial court may permit the introduction of additional evidence even after judgment has been entered if it does so within the court's plenary power.[24] Factors the trial court considers in determining whether to allow additional evidence include whether the party

---

[22] *See* Tex. R. Civ. P. 270.

[23] *See id.*

[24] *See McCarthy v. George*, 623 S.W.2d 772, 776 (Tex. App.—Fort.Worth 1981, writ ref'd n.r.e.) (holding trial court did not abuse its discretion by allowing plaintiffs to reopen the evidence thirty-three days after trial even though plaintiffs did not argue that failure to submit evidence at trial was not due to a lack of diligence; under the facts of the case, "development of this case was clearly in the interest of justice"); *see also Harrison v. Bailey*, 260 S.W.2d 702, 704–05 (Tex. Civ. App.—Eastland 1953, no writ) (holding trial court did not err by allowing appellees to introduce evidence at hearing on opposing party's motion to reform judgment); *Priddy v. Tabor*, 189 S.W. 111, 116 (Tex. Civ. App.—Fort Worth 1916, writ ref'd) (holding that trial court did not abuse its discretion by hearing additional testimony after entering judgment in bench trial when additional testimony was heard during same term as original judgment).

seeking to introduce the evidence showed due diligence in obtaining that evidence, whether the evidence is decisive, whether the trial court's reception of the evidence would cause undue delay, and whether allowing the additional evidence would cause an injustice.[25] In making this determination, the trial court should exercise its discretion liberally "in the interest of permitting both sides to fully develop the case in the interest of justice."[26]

At the hearing on the Crafts' motion, Davis's attorney conceded that although he had had the billing statement with him at the hearing on the motion to confirm the award, he had inadvertently failed to offer it at that time. But his diligence in producing evidence is not the only factor that the trial court could have considered. The court could have determined that allowing the additional evidence would not cause an injustice. The arbitration award provided for Davis's recovery of her arbitration costs. In her motion to confirm, Davis asked for her arbitration costs in conformance with the award. The Crafts knew that, if the trial court confirmed the award and tracked the language of the award in its judgment, the award would include her arbitration

---

[25] *See Hernandez v. Lautensack*, 201 S.W.3d 771, 779 (Tex. App.—Fort Worth 2006, pet. denied).

[26] *Id.* (quoting *Word of Faith World Outreach Ctr. Church v. Oechsner*, 669 S.W.2d 364, 366–67 (Tex. App.—Dallas 1984, no writ)).

11

costs. They did not object to the arbitration costs on this ground before the trial court entered final judgment. And although the Crafts objected at the hearing on their motion to modify that they had not had the opportunity to cross-examine on the billing statement, the Crafts' counsel told the trial court, "I'm not going to ask [Davis's counsel] to testify," even though Davis's counsel had personal knowledge about how the fees had been paid. The Crafts could have examined Davis's counsel about the fees in an attempt to raise evidence disputing the accuracy or reliability of the billing statement, but they chose not to. Because Davis had already been awarded her arbitration costs, and because the Crafts declined to produce any evidence of their own as to the correct amount, the trial court's allowing Davis to reopen the evidence did not cause an injustice to the Crafts.

Nor did the reopening of evidence cause undue delay. The billing statement was filed with the trial court after the Crafts' motion to modify but before the hearing on their motion. Thus, there was no delay caused by the trial court's allowing Davis to introduce additional evidence on the arbitration costs. And, with no evidence produced by the Crafts to rebut the statement, the evidence is uncontroverted. We hold that the trial court did not abuse its discretion by admitting the statement after the judgment but while the trial

court retained plenary power, and therefore it did not abuse its discretion by denying the Crafts' motion to modify.  We overrule the Craft's thirteenth issue.

## CONCLUSION

Having overruled all of the Crafts' issues, we affirm the trial court's judgment.

LEE ANN DAUPHINOT
JUSTICE

PANEL:  CAYCE, C.J.; DAUPHINOT and MCCOY, JJ.

DELIVERED:  September 11, 2008

13